SCHUYLKILL NAV. CO. (LAWRENCE v.). See Case No. 8,143.

---

## Case No. 12,498.

### In re SCHWAB.

[3 Ben. 231;[1] 2 N. B. R. 488 (Quarto, 155); 3 Bolt. Law Trans. No. 9; 1 Pittsb. Leg. J. 123.]

District Court, E. D. New York.    April, 1869.

BANKRUPTCY—INVOLUNTARY—EXPENSES OF CREDITORS—REFERENCE.

1. Where several suits had been commenced in a state court against S., in which attachments had been issued and levied upon his property, and thereupon another creditor filed a petition in the bankruptcy court, procured a warrant to the marshal, and procured injunctions staying proceedings in the state court suits, and thereupon S. was adjudged a bankrupt without opposition, and the property was secured by the assignee, *held*, that the reasonable expenses of the creditors for such proceedings ought to be paid out of the fund, and that authority for the court to direct such payment was to be found in the 1st section of the bankruptcy act.

[Cited in Re Mitteldorfer, Case No. 9,675; Re New York Mail Steamship Co., Id. 10,208; Re Mead, Id. 9,364; Re Nounnan, 7 N. B. R. 22.]

2. A reference would ordinarily be ordered to ascertain the proper amount of such expenses.

[In the matter of Julius Schwab, a bankrupt.]

This was an application on the part of the petitioning creditors, in a case of involuntary bankruptcy, for an order directing the assignee to pay to them out of the assets the amount of their reasonable expenses incurred in procuring the adjudication of bankruptcy, and preventing the disposition of the property by proceedings in the state tribunals before the appointment of an assignee in bankruptcy. The petitioners filed their petition and procured a warrant to the marshal, and prior to the adjudication and to the appointment of the assignee, procured injunctions staying the proceedings in six actions brought against the bankrupt in the state courts, in which attachments had been issued, and levied upon the property of the bankrupt. The result of this action on the part of the petitioners was an adjudication of bankruptcy without opposition, and the securing for equal distribution of property valued at some thousands of dollars, which the assignee reduced to possession, and was about to distribute. The petitioning creditors now asked to be paid out of the assets their reasonable expenses of the proceedings taken by them.

BENEDICT, District Judge. As to the justice of this application there can be no question. The action of the petitioners was necessary to be taken by some one to recover for all the creditors the property which is now about to be distributed. The fund is the fruit of their diligence, and there can be no justice in compelling them to bear alone the expenses which were incurred for the benefit of all. The only question in my mind is, therefore, whether there exists any power in the court to direct the assignee to pay these expenses—and upon consideration I am satisfied that authority for the exercise of such a power is to be found in the first section of the bankruptcy act.

The due distribution of the assets of the bankrupt, for which the first section provides, cannot be made without the exercise of this power, for the petitioning creditors cannot be said to share equally with the other creditors if they must pay the expenses of the proceedings out of their dividend and a distribution of the fund without providing for expenses like those in question, would work injustice.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

These and other obvious considerations, which are referred to in the opinions of Judge Lowell, in Ex parte Jaffray [Case No. 7,170], and of Judge Bryan, in Re Williams [Id. 17,704], seem to me abundantly to justify the construction of the bankrupt act which was given by these judges, and is now contended for by the petitioners.

In regard to the effect of the fee-bill of 1853, I may add to the cases cited in the opinions referred to, that I recollect a case in admiralty where Judge Betts, since the passage of that act, allowed a counsel fee, out of the proceeds of a vessel, for an argument made for the common benefit of various parties, who had filed libels against the vessel, as against the claim of a mortgagee who was proceeding against the fund. Shannon v. The Angelique [Case No. 12,705].

The motion is accordingly granted. A reference would, ordinarily, be directed to ascertain the proper amount, but that is unnecessary in the present case, as the amount asked for is small, and the papers show fully the proceedings. Motion granted.